**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| BARR AND MORGAN,<br>*Plaintiff*,<br><br>v.<br><br>MUSA ELJAMAL,<br>*Defendant*. | No. 3:19-cv-01455 (JAM) |

**ORDER DENYING MOTION TO DISMISS**

Musa Eljamal hired the law firm of Barr and Morgan ("Barr & Morgan") to represent his affiliated business interests in litigation in New York. Barr & Morgan has now sued him for failing to pay legal fees. Eljamal moves to dismiss for lack of personal jurisdiction, for lack of venue, and for failure to join indispensable parties; in the alternative, he moves to transfer this case to the Southern District of New York. Doc. #21. I will deny the motion to dismiss or transfer.

**BACKGROUND**

Eljamal is a New York domiciliary who lives in Ardsley, New York. Doc. #21-4 at 2 (¶ 2). He generates most of his income from investments in New York, including interests in numerous gas stations. *Id.* (¶ 4). He is also an officer and shareholder of two Connecticut corporations that own gas stations in Greenwich, Connecticut. *Id.* (¶¶ 3-4).

In 2011, Eljamal and his affiliated business interests, specifically Yonkers Central Ave. Snack Mart Inc. ("Yonkers Snack Mart"), became embroiled in litigation in New York state and federal courts. Doc. #1 at 1-3 (¶¶ 4, 7) (complaint).[1] Eljamal sought the legal services of Barr & Morgan, a Connecticut law firm, in connection with this litigation. Doc. #28-1 at 1-2 (¶¶ 1-7).

[1] The principal federal lawsuit appears to be *Croton Falls Gas Mart, Inc. et al v. NY Fuel Distributors, LLC et al*, 7:11-cv-06621 (SDNY), a Petroleum Marketing Practices Act suit that has been closed since a 2018 settlement.

Eljamal travelled to Barr & Morgan's office in Stamford, Connecticut to retain the firm in July 2011. *Id.*

From 2011 to 2015, Barr & Morgan provided legal services to Eljamal and his investment interests in at least eleven litigated matters. Doc. #1 at 3 (¶ 4). All of the legal services were performed from Stamford with the exception of physical court appearances in New York. Doc. #28-1 at 3 (¶ 17). Eljamal attended meetings at Barr & Morgan's Stamford office to discuss the litigation. *Id.* at 2 (¶ 8). Eljamal and his agents sent checks, affidavits, discovery materials and other relevant documents to the Stamford office. *Id.* at 4 (¶ 22). The specific legal services at issue in this suit, however, did not directly relate to Eljamal's Connecticut corporations or gas stations. Doc. #21-4 at 2 (¶ 3).

In June 2015, Eljamal's son and business partner, Sammy Eljamal, filed a voluntary bankruptcy petition. Doc. #1 at 3 (¶ 7). Yonkers Snack Mart also filed for bankruptcy. *Id.* (¶ 9). Eljamal and Barr & Morgan then entered into a letter agreement on July 2, 2015 relating to Barr & Morgan's representation of Yonkers Snack Mart in bankruptcy court. Doc. #21-4 at 2 (¶ 5). In the letter agreement, Eljamal appears to have agreed to personally guarantee Barr & Morgan's fees for their representation of Yonkers Snack Mart in the event its estate could not pay the fees in full. *Id.* The parties dispute the terms of that guarantee. *Id.*

Over the course of December 2018 and January 2019, Barr & Morgan exchanged communications with Eljamal about unpaid legal fees. Barr & Morgan billed Eljamal in December 2018. Doc. #21-4 (¶ 9). Eljamal contests the basis of these bills and believes they at least partly relate to entities other than Yonkers Snack Mart and so are not subject to his personal guarantee (assuming the guarantee is even effective). *Id.* (¶¶ 9, 13). In response to Barr &

Morgan's attempt to collect under the guarantee, Eljamal wrote a letter on January 13, 2019 disclaiming responsibility for the guarantee. Doc. #1 at 4 (¶ 12).

In September 2019, Barr & Morgan filed the present federal diversity suit claiming breach of contract and unjust enrichment. Doc. #1. In October 2019, Eljamal moved to dismiss the case for lack of personal jurisdiction, improper venue, and failure to join necessary parties. *Doc.* #21. Eljamal claims he has severe health issues stemming from an organ transplant that make it difficult to travel to Connecticut for court purposes. Doc. #21-4 at 3 (¶ 12). In the alternative, he moves for transfer, noting that the underlying litigation and bankruptcy case are both in the Southern District of New York.

Since Eljamal's October 2019 motion, all other relevant litigation appears to have been settled or dismissed. In particular, the bankruptcy case was dismissed on January 29, 2020. *In re Yonkers Central Avenue Snack Mart, Inc*. No. 7:15-bk-22824, Doc. #267 (Bankr. S.D.N.Y. 2020). Although the bankruptcy court's fee determination was appealed, *In Re: Yonkers Central Avenue Snack Mart, Inc*., No. 7:19-cv-03858 (S.D.N.Y.), there appears to have been an attempt to withdraw that appeal, *id*. at Doc. #7, and the case appears now to be dormant.

**DISCUSSION**

Eljamal raises three grounds to dismiss the present suit: lack of personal jurisdiction, improper venue, and failure to join a required party. In the alternative, he seeks a transfer of this action closer to his home in the Southern District of New York.

***Personal jurisdiction***

When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden to make a *prima facie* showing that jurisdiction exists, including averments of facts that—if credited—would suffice to establish jurisdiction over the defendant. *See Charles Schwab*

*Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 81 (2d Cir. 2018); *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 342 (2d Cir. 2018). For lawsuits against a defendant who is domiciled outside Connecticut, I must first consider whether Connecticut's "long arm" statute permits the exercise of jurisdiction over the out-of-state defendant and, if so, then consider whether the exercise of jurisdiction comports with constitutional due process. *See, e.g.*, *Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 168 (2d Cir. 2015).

Connecticut's long-arm statute provides personal jurisdiction "[a]s to a cause of action arising from" the act of a "nonresident individual . . . who in person or through an agent. . . [t]ransacts any business within the state." Conn. Gen. Stat. § 52-59b(a)(1). Thus, "a court possesses personal jurisdiction over a nonresident individual with respect to a cause of action arising from any business transacted in this state by that individual." *Ryan v. Cerullo*, 282 Conn. 109, 118 (2007). The transaction of business may "embrace a single purposeful business transaction," and even "a nonresident individual who has not entered this state physically nevertheless may be subject to jurisdiction in this state under § 52–59b(a)(1) if that individual has invoked the benefits and protection of Connecticut's laws by virtue of his or her purposeful Connecticut related activity." *Id.* at 119, 120.

For cases involving contractual dealings, courts interpreting Connecticut's long-arm statute ordinarily consider a range of factors, including: (1) whether the contract was negotiated or executed in Connecticut; (2) whether the defendant had an on-going contractual relationship with a Connecticut plaintiff or party; (3) whether the defendant visited Connecticut or contacted Connecticut for purposes of the parties' business dealings; (4) whether the contract has a Connecticut choice-of-law clause, and (5) any other connections of the defendant to Connecticut. *See, e.g.*, *Callahan v. Wisdom*, 2020 WL 2061882, at *5 (D. Conn. 2020); *NovaFund Advisors,*

*LLC v. Capitala Grp., LLC*, 2019 WL 1173019, at *6 (D. Conn. 2019); *Nusbaum & Parrino, P.C. v. Collazo De Colon*, 618 F. Supp. 2d 156, 161 (D. Conn. 2009); *see also Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir. 1996) (similar criteria under analogous provision in New York long-arm statute).

These factors weigh strongly in Barr & Morgan's favor. The contract for legal representation was executed in Connecticut, involved on-going dealings with a law firm based in Connecticut, and involved Eljamal's travel to Connecticut for purposes of these ongoing dealings. Accordingly, Connecticut's long-arm statute allow for the exercise of personal jurisdiction over Eljamal for purposes of Barr & Morgan's contract and unjust enrichment claims.

The next consideration is whether the exercise of personal jurisdiction over Eljamal would be fair and consistent with constitutional due process. A court must have either "general" or "specific" jurisdiction over a defendant. *See generally Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1779-81 (2017). General jurisdiction exists if the defendant is essentially at home or based in the forum State or district. *Id.* at 1780. Specific jurisdiction exists if the defendant has purposefully directed its conduct toward the forum *and* if the suit arises out of or relates to these contacts with the forum. *Id.* at 1781; *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d. 143, 151 (2d Cir. 2019).

Barr & Morgan claim specific jurisdiction, arguing that Eljamal created sufficient contacts with Connecticut by travelling to Connecticut to execute a Connecticut contract with Connecticut lawyers to conduct work that—even if its result was ultimately felt in New York court—primarily took place in Connecticut, such that Eljamal could reasonably have expected that not paying those Connecticut lawyers would lead to the Connecticut law firm suing him in

Connecticut. Barr & Morgan is correct. This is the paradigm of a case in which purposeful contact with a forum (to hire service providers, here lawyers) leads to litigation (failure to pay for those services) intimately connected with just those contacts in Connecticut.

The Due Process Clause also requires that the exercise of jurisdiction be reasonable. *See Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 113 (1987); *U.S. Bank*, 916 F.3d at 151. A court must consider the "burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief." *Asahi*, 480 U.S. at 113; *see also Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 173 (2d Cir. 2010).

As for the burden on Eljamal, the burden of litigating in Connecticut is quite small. The federal courthouse in New Haven, Connecticut where this action is based is only about 65 miles from Eljamal's home in Ardsley, New York. As for the interests of the forum state, Connecticut has as much if not more interest than New York does in the prompt payment of a small business operating in Connecticut. And as for the plaintiff's interest in obtaining relief, Barr & Morgan has the same interest any service provider has in seeking to be paid for the services it provided and without having to travel to New York. Exercise of jurisdiction in the District of Connecticut is reasonable. Accordingly, I will deny Eljamal's motion to dismiss for lack of personal jurisdiction.

***Venue***

Eljamal claims venue is not proper in the District of Connecticut. The general venue statute provides that "a civil action may be brought in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred," among other things. 28 U.S.C. § 1391(b)(2). When considering a venue challenge, a court must identify the nature of the claims and whether a substantial part of the acts or omissions that underlie the claims occurred in the

district where the lawsuit was filed. *See Daniel v. Am. Bd. of Emergency Med*., 428 F.3d 408, 432-33 (2d Cir. 2005). This action is fundamentally a contract dispute. In determining where a substantial part of a contract dispute occurred, courts look to "such factors as where the contract was negotiated or executed, where it was to be performed, and where the alleged breach occurred." *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005).

Here, the original agreement between the parties was formed in Connecticut. The work was almost exclusively completed in Connecticut, other than an occasional trip to New York for court appearances (which, it appears from my inspection of the docket, were few and far between). Because the nature of the specific acts in the forum (the formation and execution of the contract) have a close nexus to the claims—indeed, they are the very basis for the claims—it follows necessarily that a substantial part of the acts occurred in Connecticut. *See Marcus v. Am. Contract Bridge League*, 562 F. Supp. 2d 360, 364 (D. Conn. 2008) (employee's performance of contracted functions in Connecticut, among other states, was sufficient to render Connecticut "one place where substantial and material events giving rise to this claim [failure to pay for services] occurred"). Venue is proper in the District of Connecticut.

***Transfer***

In the alternative, Eljamal moves to transfer this case to the Southern District of New York pursuant to 28 U.S.C. § 1404, which permits transfer from one proper venue to another "for the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). Venue is indisputably proper in the Southern District of New York because the defendant lives there. 28 U.S.C. § 1391(b)(1). But Eljamal, as the moving party, bears the burden of making out a strong case for transfer, and the presumption in favor of a plaintiff's choice of venue may be overcome only by clear and convincing evidence that the relevant factors favor transfer. *New*

*York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 114 (2d Cir. 2010). Among the factors a court should consider are:

> (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties.

*Id.* at 212 (internal quotations omitted).

I have considered all of these factors and conclude that Eljamal has not carried his burden to show by clear and convincing evidence that this action should be transferred. In particular, Eljamal fails to show why Barr & Morgan's choice of forum should not be respected and why the litigation of this action in the District of Connecticut would burden him in his ability to defend this case.

***Failure to join required parties***

Without citing any law or precedent, Eljamal tags on a one-paragraph argument at the end of his motion that the complaint should be dismissed because Barr & Morgan has failed to join necessary parties such as Yonkers Snack Mart and Sammy Eljamal. Rule 19 of the Federal Rules of Civil Procedures governs when a party's joinder is required as a necessary party. A party is not indispensable if the defendant could implead them under Rule 14. *See Associated Dry Goods Corp. v. Towers Fin. Corp.*, 920 F.2d 1121, 1124 (2d Cir. 1990). Eljamal does not explain why he could not implead the parties he claims are necessary. Moreover, a personal guarantee makes the guarantor joint and severally liable for the fees. *See Wells Fargo Equip. Fin., Inc. v. Woods at Newtown, LLC*, 2011 WL 4433108, at *6 (S.D.N.Y. 2011). Parties sharing joint and several liability are not indispensable parties under Rule 19(b). *See Universal*

*Reinsurance Co. v. St. Paul Fire & Marine Ins. Co.*, 312 F.3d 82, 87 (2d Cir. 2002). Accordingly, I will deny Eljamal's motion to dismiss for failure to join necessary parties.

**CONCLUSION**

For the foregoing reasons, Eljamal's motion to dismiss or in the alternative for transfer (Doc. #21) is DENIED. It is so ordered.

Dated at New Haven, Connecticut, this 2d day of July 2020.

/s/ ***Jeffrey Alker Meyer***
Jeffrey Alker Meyer
United States District Judge